IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELEAQIA MCCRAE, | Case No. 6:20-cv-01489-MC |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| CITY OF SALEM, CITY MANAGER STEVE POWERS, POLICE CHIEF JERRY MOORE, OFFICER KEVIN RAMIREZ, OFFICER ROBERT JOHNSTON, | |
| Defendants. | |

**MCSHANE, Judge**:

This civil rights case arises from an eye injury Plaintiff sustained while at a protest in Salem, Oregon. The Defendants are the City of Salem, City Manager Steve Powers, Police Chief Jerry Moore, and Salem police officers Johnston and Ramirez. They move for summary judgment on all of Plaintiff's claims, including all constitutional and *Monell* claims, a § 1981 claim, and state-law claims for battery, assault, intentional infliction of emotional distress, and negligence.

Because issues of fact remain concerning the cause of Plaintiff's injury and the reasonableness of Officer Johnston's conduct, summary judgment is denied in part. Summary judgment as to Plaintiff's First and Fourth Amendment claims against Johnston, as well as her state-law claims for battery, assault, and negligence against the City is DENIED. Summary judgment is GRANTED as to all other claims.

1 – OPINION AND ORDER

## FACTUAL BACKGROUND

Plaintiff Eleaqia McCrae arrived at the Oregon State Capitol the evening of May 31, 2020, to join an ongoing protest. Warren Decl. Ex. 6, at 5–6, ECF No. 43. At about 9:00 p.m., the protestors, including McCrae, left the Capitol and marched through downtown Salem toward the Marion Street Bridge. *Id.* at 7, 9; Van Meter Decl. ¶ 5, ECF No. 42. The group marched to the top of the bridge, occupying it and blocking vehicles. Van Meter Decl. ¶ 5. The Salem Police responded to the area, but the group left the bridge on their own accord and returned to the Capitol. *Id.*; Warren Decl. Ex. 6, at 11–12. Throughout the course of the protests, the Salem Police were concerned with keeping the Marion and Center Street Bridges free and open as critical infrastructure. *See* Van Meter Decl. ¶ 4; Warren Decl. Ex. 2, at 3.

Later that evening, the group of a few hundred protestors again left the Capitol and headed back toward the bridges. Gerald Moore Decl. Ex. 1, at 7, ECF No. 39. McCrae was near the front of the group. Warren Decl. Ex. 6, at 16. The Salem Police formed a line at the intersection of Liberty Street and Center Street, just in front of both bridges, to prevent protesters from reoccupying the bridges. Van Meter Decl. ¶ 8, Ex. 2. Along with officers in riot gear, the police department's armored vehicle was staged in the middle of the line. *Id.* ¶ 9. Three officers operated as grenadiers that evening, including Defendant Johnston, who were responsible for deploying less-lethal munitions. Johnston Decl. ¶ 4, ECF No. 37.

At approximately 9:52 p.m., the Salem Police declared the assembly unlawful. Van Meter Decl. ¶ 10. An officer began broadcasting orders to disperse over a loudspeaker at that time. Garland Decl. ¶ 4, ECF No. 29. At about 9:58 p.m., after the crowd refused to disperse and began throwing objects[1] toward the police line, Lt. Van Meter authorized use of less-lethal

---

[1] The kind of objects being thrown by the crowd is contested. Several officers state in declarations that the projectiles included water bottles, fireworks, rocks, bricks, and glass bottles. Defs.' Mot. Summ. J. 15, ECF No. 25.

2 – OPINION AND ORDER

munitions. Van Meter Decl. ¶ 12, Ex. 3. Defendant Johnston deployed multiple rounds of small rubber balls known as "stingers" into the crowd, which are meant to be aimed at the ground and bounce up to strike the crowd in the shins. Johnston Decl. ¶ 6, 9.

As McCrae turned around to leave, she was struck by an object in the eye. Warren Decl. Ex. 6, at 28. McCrae does not know what hit her, but believes it was a rubber bullet. *Id.* at 19, 29. Officer Morrison, a member of the police response team that night, stated that as the police line moved toward the crowd, he saw McCrae get hit in the head with an object from the crowd. Morrison Decl. ¶ 5, Ex. 1, at 2, ECF No. 40. He then saw her fall to the ground and crawl to the sidewalk. *Id.* Video evidence of the incident shows McCrae fall, but it is unclear what hit her. Michael Adams Decl. Ex. 1, ECF No. 35. McCrae admits to seeing people from the crowd throw a few water bottles, but no other objects. Warren Decl. Ex. 6, at 14. McCrae's sister, Syvon Adams, also attended the protest and stated that she was shot by rubber bullets on her arms and legs that evening. Syvon Adams Decl. ¶ 5, Ex. 1, ECF No. 50.

After McCrae fell to the sidewalk, Defendant Ramirez heard over the radio a call for a medic for an injured woman. Warren Decl. Ex. 5, at 7. Ramirez was acting in a support role for the night, so he left his position behind the police line to assist McCrae until medics could arrive. *Id.* at 3, 7. McCrae was standing on the sidewalk with her hands in the air when Ramirez approached. *Id.* at 9; Warren Decl. Ex. 6, at 23. He introduced himself and told McCrae that she was not in trouble and could put her hands down. *Id.* McCrae, however, did not lower her hands because she was "so emotional" and unsure whether she was under arrest. Warren Decl. Ex. 6, at 23. Ramirez asked if someone could look at her eye, then asked McCrae, for safety purposes, to

---

Two officers stated explosives went off near them, and one officer stated a large rock hit his foot. *Id.* But McCrae argues the crowd was peaceful, and that video evidence shows only a few water bottles landing far in front of the police. Pl.'s Resp. to Mot. Summ. J. 13, ECF No. 48.

3 – OPINION AND ORDER

walk back to the patrol cars with him to wait for medics. Warren Decl. Ex. 5, at 11; Ex. 6, at 23. McCrae declined going with him to the patrol cars and medics arrived a few minutes later. Ramirez Decl. ¶ 3, ECF No. 32; Warren Decl. Ex. 5, at 10. Ramirez then walked with McCrae and an EMT to the ambulance. Warren Decl. Ex. 5, at 11.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Defendants move for summary judgment on Plaintiff's federal and state-law claims. The Court first addresses claims against individual Defendants followed by claims against the City.

### I. Claims against Powers and Moore

Plaintiff brings First and Fourth Amendment claims against City Manager Powers and Police Chief Moore under § 1983 alleging supervisory liability for Plaintiff's injury. While there is no vicarious liability under § 1983, a supervisor can be liable where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists

between the supervisor's unlawful conduct and the constitutional violation." *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010).

A plaintiff can establish a causal connection by showing that the supervisor set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which the supervisor "knew or should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011). Supervisors can be liable for (1) their "own culpable action or inaction in the training, supervision, or control of [] subordinates"; (2) their acquiescence in the constitutional deprivation; or (3) their "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1206–07. Mere presence at the scene or membership of the same operational unit as a wrongdoer is insufficient to impose liability. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).

Here, the evidence is insufficient for any reasonable juror to conclude that Powers or Moore supported, acquiesced in, or acted with deliberate indifference toward Plaintiff's constitutional rights. Plaintiff cannot demonstrate Powers' or Moore's personal participation, as neither Defendant was present at the protest and neither one made the decision to employ less-lethal munitions. *See* Brague Decl. Ex. 6, at 2, ECF No. 55; Warren Decl. Ex. 1, at 9. Nor is there a causal connection to Plaintiff's injury. Powers and Moore both received off-site updates about the status of the protest, but neither Defendant gave any commands or directives regarding police tactics used that night. *See* Brague Decl. Ex. 6, at 3–4. In fact, Deputy Chief Miller was in command for the evening and had full authority to take whatever actions he felt necessary, without need for Moore's approval. *Id.* Neither Defendant was in contact with Lt. Van Meter, who ultimately made the decision to employ less-lethal munitions on the crowd that night.

5 – OPINION AND ORDER

While Plaintiff argues Powers and Moore acquiesced to the unlawful use of less-lethal munitions, they operated based on secondhand accounts of what was occurring on the ground. Moore's after-the-fact understanding of the events was that munitions were "utilized because officers were under attack from fireworks, projectiles, bricks, water bottles, and rocks." *Id.* at 7. Nothing suggests that Powers or Moore actively refused to terminate a series of acts which they "knew or should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08. They merely received off-site status updates, remaining informed as to how the police unit responded to the crowd as the protest progressed. Powers' and Moore's near total lack of personal involvement in the alleged constitutional deprivation is insufficient to impose individual liability under § 1983.

Accordingly, summary judgment is granted as to Plaintiff's First and Fourth Amendment claims against Defendants Powers and Moore.

## II. Claims against Officer Ramirez

Plaintiff brings First and Fourth Amendment claims under § 1983 against Officer Ramirez, arguing Ramirez unreasonably detained her and violated her free speech rights by not allowing her to leave the scene after she was injured. Defendants argue Ramirez did not seize Plaintiff or suppress her speech and, even if he did, he is entitled to qualified immunity on both claims.

To prevail on a § 1983 claim against an individual official, a plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A public official sued in an individual capacity may assert a defense based on qualified immunity. *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015). The court considers two questions, in either order, to determine if qualified immunity

...

Case 6:20-cv-01489-MC   Document 65   Filed 03/21/22   Page 7 of 17

applies: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the official's conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A plaintiff must prove both steps to establish the official is not entitled to immunity from the action. *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). As the Supreme Court has repeatedly explained, courts are "not to define clearly established law at a high level of generality." *Felarca*, 891 F.3d at 816. "The law must have been clear enough that '*every* reasonable official' would know he or she was violating the plaintiff's rights." *Id.* (quoting *Sheehan*, 575 U.S. at 611).

Plaintiff argues that Ramirez unlawfully seized her in violation of the Fourth Amendment by not allowing her to leave the scene after she was injured. A seizure occurs if "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (citation omitted). The court considers a number of factors when determining if a person was seized:

> (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; (4) whether the officer's tone or manner was authoritative, so as to imply that compliance would be compelled; and (5) whether the officers informed the person of his right to terminate the encounter.

*United States v. Washington*, 490 F.3d 765, 771–72 (9th Cir. 2007). The Fourth Amendment is not implicated, however, where a law enforcement officer merely identifies himself and poses questions to a person in public if the person is willing to listen. *Id.* at 770. The permissible

7 – OPINION AND ORDER

questions may include a request for consent to search, "as long as the police do not convey a message that compliance with their requests is required." *Id.* (quoting *Bostick*, 501 U.S. at 435).

Taking into account the circumstances here, Ramirez's conduct did not reasonably communicate to Plaintiff that she was not free to leave. Ramirez offered assistance to Plaintiff, asking to see her eye injury and informing her that medics were on the way. No one told Plaintiff she was under arrest, and Ramirez told her she was not in trouble. While Ramirez was in uniform, he did not give any authoritative commands to Plaintiff. *See* Warren Decl. Ex. 6, at 3. Despite Ramirez asking Plaintiff to walk to the patrol cars, there is no evidence that he conveyed this request as a requirement. Indeed, Plaintiff felt at liberty to decline going with him to the patrol cars.

Ramirez was merely present at the scene and asking questions of Plaintiff relative to her injury, which is not a sufficient show of authority to cause a reasonable person to believe she could not leave. Still, even if Ramirez's conduct along with Plaintiff's subjective belief that she was not free to leave were enough to constitute an unlawful seizure, Ramirez's conduct was not unreasonable such that he violated a clearly established right. Plaintiff provides no authority establishing that an officer commits an unlawful seizure when assisting an injured citizen at a protest. And one can only imagine the claims a plaintiff might bring if an officer ignored an injured citizen and failed to render aid or alert medics. Plaintiff's Fourth Amendment claim against Ramirez therefore fails.

Plaintiff's First Amendment claim against Officer Ramirez also fails. To establish a First Amendment retaliation claim, Plaintiff must show that (1) she was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or

motivating factor in the defendant's conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Plaintiff has not shown any of the three elements. Plaintiff was no longer engaged in the protest when Ramirez approached her, and his assistance with Plaintiff's injury is hardly chilling conduct. But even assuming a constitutional violation, there is no clearly established law that an officer responding to an injured protester violates the protester's First Amendment free speech rights.

Accordingly, summary judgment is granted as to Plaintiff's First and Fourth Amendment claims against Ramirez.

### III. Claims against Officer Johnston

Plaintiff brings First and Fourth Amendment claims against Officer Johnston, arguing he unlawfully retaliated and used excessive force against her for protesting police brutality. Defendants respond that Plaintiff has not proved that Johnston caused her injury, and even if he did, he acted reasonably.

The Court declines to grant summary judgment on these claims as issues of fact remain concerning causation and reasonableness. As a threshold matter, there is conflicting evidence concerning who caused Plaintiff's eye injury. Defendants provide direct evidence through an officer's declaration that Plaintiff was hit by an object from the crowd. *See* Morrison Decl. ¶ 5, Ex. 1, at 2. Plaintiff counters with enough circumstantial evidence to support an inference that she was hit with a rubber bullet.

Plaintiff's nearby sister stated that she too was hit by rubber bullets at the protest, and her declaration includes pictures of the bruising that appear consistent with rubber bullet bruises. *See* Syvon Adams Decl. ¶ 5, Ex. 1. Plaintiff herself alleges that she was hit in the chest by a small projectile she believed to be a rubber bullet close in time to the object hitting her eye. *See* Brague

Decl. Ex. 1, at 26–27; Warren Decl. Ex. 6, at 33. Additionally, a retina specialist who examined Plaintiff concluded that whatever object hit Plaintiff's eye would have to be "small enough to [] get inside the actual bones . . . of the eye to put force on the eye." Warren Decl. Ex. 7, at 10. This is inconsistent with Defendant's argument that Plaintiff was struck by a water bottle, brick, or stone. Video evidence, although lacking in resolution, clearly supports the timing of Plaintiff's injury relative to when Johnston deployed less-lethal munitions. Finally, given the distance between the police and the protesters, it is hard to imagine that a small object could be propelled by someone in the crowd with the right trajectory and force to both reach the police (the likely target) and to cause the type of injury sustained by Plaintiff. Therefore, the threshold issue of who caused Plaintiff's injury is a genuine issue of material fact that must be resolved by the jury.

Assuming Plaintiff can prove causation, competing interpretations of the remaining evidence further preclude the Court from granting summary judgment on these claims. Plaintiff and Defendants paint entirely different pictures of the nature of the gathering that evening. In Plaintiff's view, this was a peaceful crowd that posed no threat to officers or the public, while in Defendants' view, the crowd assaulted officers with projectiles and threatened critical infrastructure such that it was an unlawful riot. Defendants support their arguments with several officer declarations confirming the hostile nature of the crowd and the threat of being hit with projectiles, including water bottles, rocks, bricks, and fireworks. Plaintiff relies on her own declaration and those of others in attendance, all stating the crowd was peaceful, as well as video evidence that appears to show a relatively docile crowd.

Viewing the facts in the light most favorable to Plaintiff, a trier of fact could conclude that Johnston's conduct in deploying less-lethal munitions into an unassuming crowd was chilling conduct that was motivated by the crowd's protected First Amendment activity. *See*

10 – OPINION AND ORDER

*Pinard*, 467 F.3d at 770. Similarly, a trier of fact could conclude that Johnston's conduct was objectively unreasonable in these circumstances such that it constituted excessive force in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) (explaining that an officer's use of force must be objectively reasonable under the circumstances).

Additionally, because the question of whether Johnston's conduct violated a clearly established constitutional right turns on disputed facts, the Court cannot make a determination regarding qualified immunity at this stage. *See Hopkins v. Bonvicino*, 573 F.3d 752, 762–63 (9th Cir. 2009) (When ruling on qualified immunity, "a trial court should not grant summary judgment when there is a genuine dispute as to 'the facts and circumstances within an officer's knowledge' or 'what the officer and claimant did or failed to do.'"); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1180 (9th Cir. 2013) ("[G]iven the factual dispute before it, which must be resolved by a jury, the district court *could not* have properly granted [Defendant] qualified immunity."); *see also Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

Accordingly, summary judgment is denied as to Plaintiff's First and Fourth Amendment claims against Officer Johnston.

## IV. Section 1981 claim

Plaintiff brings a § 1981 against individual Defendants Powers, Moore, Ramirez, and Johnston, arguing the intentional targeting of Plaintiff with less-lethal munitions was based on her race. A plaintiff in a § 1981 claim "must show intentional discrimination on account of race." *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). Additionally, a plaintiff must "prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

11 – OPINION AND ORDER

Plaintiff claims that because white protesters suffered no injury, it follows that she and her sister were targeted by Defendants because they are Black. Pl.'s Resp. to Mot. Summ. J. 38, ECF No. 48. Aside from bare assertions, Plaintiff provides no evidence of intentional discrimination, or that her race was the but-for cause of her injury. *See Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1091 (D. Or. 2020). In fact, two declarations offered in support of Plaintiff demonstrate that rubber bullets struck several people in the crowd regardless of race. *See* Abby Moore Decl. ¶ 5, ECF No. 51; Vanderzee Decl. ¶ 7, ECF No. 53. The evidence is clear that less-lethal munitions were employed on the crowd at large due to the perceived threat to officers and public safety. While issues of fact remain as to whether the use of force was reasonable, nothing suggests that officers targeted individual protesters for any reason.

Accordingly, summary judgment is granted as to Plaintiff's § 1981 claim.

## V. *Monell* claim

Plaintiff brings a *Monell* claim against the City of Salem, arguing the City had unconstitutional policies, practices, and customs, and failed to train their employees.

A municipality may be liable under § 1983 when the execution of the municipality's policy or custom inflicts a constitutional deprivation or injury. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Municipal liability may be based on any of three theories: (1) an official policy, (2) an unofficial custom or practice, or (3) the decision of someone with final policymaking authority. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). A plaintiff may also bring a § 1983 failure to train and supervise claim, in which she must show the municipality has customs or policies that amount to deliberate indifference and were the moving force behind the violation of the plaintiff's constitutional rights. *Long*, 442 F.3d at 1186.

Plaintiff appears to proceed under all three *Monell* theories as well as a failure to train theory.[2] Plaintiff alleges the City has a number of unconstitutional policies regarding the police department's crowd control methods, but there is no evidence in the record of such policies. Plaintiff therefore fails on the first theory. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[T]he existence of the unconstitutional policy, and its origin, must be separately proved."). Plaintiff also fails on the second theory, as she does not demonstrate a pattern of constitutional violations necessary to establish an unofficial custom or practice. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.").

As to the third theory, Plaintiff asserts municipal liability based on Lt. Van Meter's decision to employ less-lethal munitions, arguing he is an official with final policymaking authority. Whether an official has "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotonik*, 485 U.S. 112, 113 (1988). In determining whether an official acted with final policymaking authority, "courts consider whether the official's decision is 'constrained by policies not of that official's making' and whether the official's decision is 'subject to review by the municipality's authorized policymakers.'" *Christie v. Iopa*, 176 F.3d 1231, 1236–37 (9th Cir. 1999) (quoting *Praprotonik*, 485 U.S. at 127). Courts may also evaluate local charters, ordinances, and policies to determine where final policymaking authority lies. *See id.* at 1237; *Schiff v. City & County of San Francisco*, 816 F. Supp. 2d 798, 812 (N.D. Cal. 2011).

The Chief of Police may be considered a final policymaking official where policies adopted by the Chief and police department can be fairly said to represent the city's policy on

---

[2] Plaintiff concedes there is insufficient evidence to support a failure to train theory. Pl.'s Resp. 34. The Court agrees and therefore grants summary judgment on Plaintiff's failure to train claim.

13 – OPINION AND ORDER

police matters. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). But local heads of departments are not automatically policymaking officials. *See Gillette v. Delmore*, 979 F.2d 1342, 1350 (9th Cir. 1992) (holding that fire chief's discretionary authority to hire and fire employees did not make him a final policymaker because he was not responsible for establishing the city's employment policy).

Plaintiff fails to demonstrate that Lt. Van Meter is an official with final policymaking authority. Plaintiff has not cited to any ordinance, code, or other enactment to suggest that a Lieutenant has final policymaking authority regarding police crowd control tactics for the City of Salem. Plaintiff provides a directive showing the chain of command for the Salem Police Department as evidence of Lt. Van Meter's authority, where Chief of Police is ranked first, followed by the Deputy Chief of Police, then Lieutenant. Brague Decl. Ex. 15. This document suggests the opposite of Plaintiff's contention. Lt. Van Meter operates under the authority of the Chief of Police and the Deputy Chief. While Lt. Van Meter was making on-the-ground decisions regarding crowd control tactics that night, one night of discretionary decision-making does not make him an official policymaker representative of the City of Salem. *See Gillette*, 979 F.2d at 1350. Accordingly, Plaintiff's claim under the third theory of *Monell* liability fails.

Summary judgment is therefore granted as to Plaintiff's *Monell* claim.

## VI. Battery and Assault claims

Plaintiff brings a battery and assault claim against the City of Salem[3] for her injury. Defendants argue the City is immune from liability under Or. Rev. Stat. § 30.265(6)(e),[4] and that

---

[3] Plaintiff concedes the City of Salem is the appropriate Defendant for these claims. Pl.'s Resp. 39; Or. Rev. Stat. § 30.265(3). Accordingly, Plaintiff's battery and assault claims against individual Defendant Johnston are dismissed.
[4] The Court finds Defendants' reliance on Or. Rev. Stat. § 30.265(6)(e) unavailing. There is little caselaw interpreting this provision, including what constitutes a "riot, civil commotion or mob action." Further, issues of disputed fact regarding the overall nature of the crowd preclude the Court from determining whether this provision applies. The Court therefore declines to grant summary judgment based on Or. Rev. Stat. § 30.265(6)(e) immunity.

even without immunity, Plaintiff cannot prove Johnston injured her. To prevail on state-law claims for battery and assault, a plaintiff must show (1) the defendant acted "intending to cause a harmful or offensive touching" with the plaintiff, or an imminent apprehension of such contact; and (2) "a harmful or offensive contact" with the plaintiff directly or indirectly results (battery), or the plaintiff was put in imminent apprehension (assault). *Skille v. Martinez*, 406 P.3d 126, 130 (Or. Ct. App. 2017).

Police officers using reasonable force to legitimately fulfill their duties are not liable for battery. *Deconnick v. City of Seaside*, No. 3:12-cv-01501, 2013 WL 5939965, at *23 (D. Or. Nov. 3, 2013) (citing *Gigler v. City of Klamath Falls*, 537 P.2d 121 (Or. Ct. App. 1975)). Further, a police officer is presumed to be acting in good faith in determining the amount of force necessary to make an arrest. *Rich v. Cooper*, 380 P.2d 613, 617 (Or. 1963). But excessive use of force can give rise to civil liability for battery. *Ballard v. City of Albany*, 191 P.3d 679, 686 (Or. Ct. App. 2008). As explained above, genuine issues of material fact exist concerning the reasonableness of Johnston's use of force. Because the battery and assault claims against the City depend on whether Johnston caused Plaintiff's injury, and whether his use of force was reasonable, summary judgment is denied.

## VII. IIED

Plaintiff argues Johnston intended to inflict emotional distress on Plaintiff by targeting her with rubber bullets based on her race. To state an IIED claim, a plaintiff must show that "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995). "It is not enough that [the defendant] intentionally

acted in a way that causes such distress." *Franklin v. Portland Cmty. Coll.*, 787 P.2d 489, 492 (Or. Ct. App. 1990) (alteration in original).

Similar to her § 1981 claim for intentional discrimination, Plaintiff produces no evidence that Johnston targeted her based on her race with the intent to inflict emotional distress on her. By Plaintiff's own account, and others present at the protest, Johnston deployed less-lethal munitions on more than just her. *See* Pl.'s Resp. 43; Abby Moore Decl. ¶ 5; Vanderzee Decl. ¶ 7. Nothing suggests that Johnston deployed his weapon with any other intent or purpose than to disperse the crowd. Further, Plaintiff fails to meet the exceedingly high bar of showing Johnston's conduct was beyond "the bounds of socially tolerable conduct." *See McGanty*, 901 P.2d at 850. Overt acts of racism can support a claim for IIED, but no such evidence exists here. *See Williams v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 958 P.2d 202, 204 (Or. Ct. App. 1998).

Accordingly, summary judgment is granted as to Plaintiff's IIED claim.

## VIII. Negligence

Plaintiff alleges the City was negligent based on the actions of Officer Johnston. To succeed on this claim, plaintiff must show:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Son v. Ashland Cmty. Healthcare Servs.*, 244 P.3d 835, 841 (Or. Ct. App. 2010). As explained above, because issues of fact remain as to the reasonableness of Johnston's conduct, summary judgment is inappropriate on Plaintiff's negligence claim.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment, ECF No. 25, is GRANTED in part and DENIED in part. Plaintiff's claims against individual Defendants Powers, Moore, and Ramirez are dismissed. Plaintiff's *Monell* and § 1981 claims are dismissed. Plaintiff's state-law claim for IIED, as well as her battery and assault claims against Defendant Johnston, are dismissed. Summary judgment is denied as to Plaintiff's First and Fourth Amendment claims against Defendant Johnston, as well as Plaintiff's battery, assault, and negligence claims against the City of Salem.

IT IS SO ORDERED.

DATED this 21st day of March, 2022.

_s/Michael J. McShane_____
**Michael J. McShane
United States District Judge**

17 – OPINION AND ORDER