Jennifer M. Gaddis, OSB #071194
*jgaddis@cityofsalem.net*
City of Salem Legal Department
555 Liberty St. SE, Room 225
Salem, OR 97301
   Telephone: 503-599-6003
   Fax: 503-361-2202

Aaron P. Hisel, OSB #161265
*aaron@montoyahisellaw.com*
Law Offices of Montoya, Hisel and Associates
901 Capitol St. NE
Salem, OR 97301
   Telephone: 503-480-7250
   Fax: 503-779-2716
     Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| ELEAQIA MCCRAE, | Case No. 6:20-cv-01489-IM |
| Plaintiff, | |
| | **DEFENDANTS' RULE 50 MOTION** |
| v. | |
| CITY OF SALEM, et al. | |
| Defendants. | |

**LR 7-1 CERTIFICATION**

This Motion is additional briefing requested by the Court after multiple Rule 50 Motions were made in open court such that no additional conferral is required.

**MOTION**

Pursuant to Fed. R. Civ. P. 50(b), Defendants renew their motion for judgment as a matter of law under Fed. R. Civ. P. 50(a), made before the case was submitted to the jury, on the basis that Officer Johnston is entitled to qualified immunity.

**MEMORANDUM OF LAW**

I.   **Renewed Motion For Judgment As A Matter of Law**

"When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1088 (9th Cir. 2017) (citation and quotation marks omitted). "In evaluating a renewed qualified immunity motion under Rule 50(b) after a jury trial, we analyze the motion based on the facts established at trial, *see Reese*, 888 F.3d at 1036, viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in favor of the nonmoving party, *see Barnard*, 721 F.3d at 1075." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020*), cert. denied sub nom. Acosta v. Lam*, 211 L. Ed. 2d 14, 142 S. Ct. 77 (2021).

II.   **Procedural History**

In their Motion for Summary Judgment and at trial, Defendants argued that Officer Johnston is entitled to qualified immunity because even if a constitutional violation occurred, there was no case clearly establishing his conduct was unconstitutional. (ECF 25, pp. 38-39). Plaintiff responded that "Officer Johnston is not entitled to qualified immunity because he shot 60 Cal. Rubber balls at Plaintiff who was unarmed and retreating from advancing officers." (ECF 48, p. 34) (relying on *Nelson v. City of Davis* and *Deorle v. Rutherford*). Defendants replied by distinguishing the circumstances in the present case from *Nelson* and *Deorle*. (ECF 57, p. 18)

Page 2 – **DEFENDANTS' RULE 50 MOTION**

(Unlike in those cases, Plaintiff's crowd here was comprised of aggressive protesters, protesters were actually threatening public safety officers by blocking critical infrastructure, audible warnings to disperse were given repeatedly before munitions designed to disperse the crowd with minimal risk of injury were deployed.). On March 21, 2022, Judge McShane found a genuine dispute of fact regarding the nature of the crowd and reserved the question of qualified immunity to be determined as part of the trial process. (ECF 65, p. 10).

The jury found Officer Johnston's use of a Stinger round under the circumstances a violation of Plaintiff's Fourth Amendment rights, but specifically determined he did **not** target Plaintiff or violate her First Amendment rights. (ECF 114). For the reasons that follow, and those argued at trial, and in Defendants' Summary Judgment Motion, Officer Johnston remains entitled to qualified immunity.

### III. On May 31, 2020, It Was Not Clearly Established That A Police Officer May Not Use A Stinger Round On A Crowd That Included Individuals Actively Engaging In Aggressive And Assaultive Conduct Toward Officers

It is Plaintiff's burden to show Officer Johnston violated her constitutional right, and that right was "was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis added). Barring an "obvious" case, "the 'clearly established' analysis in the excessive force context requires the court to '*identify a case* where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment'" in a manner that would put every reasonable officer on notice. *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (quoting *White v. Pauly*, 580 U.S. 73 (2017) (per curiam) (emphasis added)). While the jury found Officer Johnston's conduct violated Fourth Amendment rights, Plaintiff *cannot* identify precedent clearly establishing that an officer in Officer Johnston's situation would violate the Fourth Amendment by firing a low-level indiscriminate (not targeted) Stinger round towards the

Page 3 – **DEFENDANTS' RULE 50 MOTION**

group he faced, if any of the small rubber balls hit one of the non-violent members of the crowd. Stinger rounds would not be used in law enforcement if the Fourth Amendment were so "well settled" but both experts testified about their continued use by the law enforcement profession. (Hisel Decl., Ex. 1, Defoe Tr. pp. 1, 11-12, 21-22, 34-35; Ex. 3, Fomby Tr. pp. 7-8, 11, 14-15, 16, 19-22).

Throughout the summary judgment and trial motions on qualified immunity Plaintiff has primarily relied upon the case of *Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012). While similar in that Mr. Nelson was hit in the eye during the dispersal of a crowd, the *material* facts and related legal analysis are distinguishable on every front.

In *Nelson*, "the only governmental interest involved in the application of force to Nelson and his friends was the officers' desire to clear the complex of the party-going individuals." *Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012). In the present case, officers acted to disperse a crowd that posed an immediate risk to officers and to critical infrastructure (that they had already occupied once before that evening). As to the immediate threat, the uncontroverted video evidence shows Plaintiff standing adjacent to an individual who picks up <u>and throws a smoking CS gas canister at the officers</u> immediately before she was struck. (*See* Hisel Decl., Ex. 4 at 2:09 (The video entered into evidence as Pltf's Ex. 110, Defs' Ex. 201)). Plaintiff (in orange) is seen continuing to defy lawful orders to disperse, while standing directly next to this individual who is engaged in the categorical conduct of active aggression and violence by picking up and throwing the canister back at the police. (*Id.; See also* Hisel Decl. Ex. 1, Tr. p. 26) (Plaintiff's expert testifying that "somebody picking up a gas canister, well, that's a person that you would want to use a specific round for, like a BIP. That's behavior that you want to stop right away. That's

Page 4 – **DEFENDANTS' RULE 50 MOTION**

aggressive, assaultive behavior.")[1] Officer Johnston similarly testified that the man who threw the smoke canister back at officers "would have been a great candidate for a [targeted] BIP round" which would be an even higher level of force than a Stinger round. (Hisel Decl., Ex. 2, Tr. pp. 62-63; Ex. 5).



It is at this very moment that Plaintiff is injured, and the jury determined Plaintiff was struck by a Stinger round fired by Officer Johnston. (ECF 114). More unidentified objects are launched toward the line of officers, including an object that appears to be on fire at this moment:



---

[1] A BIP is also known as a "blunt impact projectile" round, which is a type of targeted, point-of-aim, point-of-impact, less-lethal munition.

Page 5 – **DEFENDANTS' RULE 50 MOTION**

(Hisel Decl., Ex. 4, Defs' Ex. 201 at 2:09)   (Hisel Decl., Ex. 7, Defs' Ex. 204 at 10:30)[2]

Further, the officers in *Nelson* acted **_contrary_** to their training by using pepperball munitions, which are a type of targeted point-of-aim-point-of-impact "concussive" force in a manner those munitions are **not** designed to be used. *Nelson,* 685 F.3d at 879 (holding that the evidence was that pepperballs were a type of munition <u>never</u> intended to be used to "indiscriminately" disperse a crowd). Here, Plaintiff's own evidence remains uncontroverted that the Stinger round is designed for the exact opposite purpose of what the Court faced in *Nelson.* (Hisel Decl., Ex. 5, Pltf's Trial Ex. 109). The Stinger round is designed by the manufacturer and sold to law enforcement as a tool that is "ideal for lower threat levels such as a non-compliant crowd prior to the use of more dynamic munitions." *Id.* The Ninth Circuit has even very recently clarified that its holding in *Nelson* was limited to "pepperballs" for this very reason. *See Williams v. City of National City,* 23 F.4th 1146, 1152 (9th Cir., 2022) (distinguishing *Nelson* from other authority on the basis that *Nelson* involved a situation where "officers were advised not to shoot pepperballs indiscriminately…"). The very purpose of a Stinger round is to be used as a lower-level <u>indiscriminate</u> tool for dispersing crowds. (Hisel Decl., Ex. 5). *Nelson* **cannot** serve to strip Officer Johnston of the qualified immunity he is entitled to on this basis alone. *See Rivas-Villegas v. Cortesluna*, 142 S.Ct. 5, 7-8 (2021) (Supreme Court discussing the specificity **required** for Officer Johnston to lose his entitlement to qualified immunity and the importance of that specificity in the context of Fourth Amendment claims).

Further still, in *Nelson* the officers made insufficient efforts to provide dispersal orders. *Nelson* at 873-874. "[O]fficers issued a verbal order to disperse but acknowledge[d] that they

---

[2] Based on the sounds of the announcements and LRAD siren, this lit object would have been launched right before Plaintiff was injured. Numerous other objects can be identified as being thrown directly at the police in the moments immediately before Plaintiff was injured from these same exhibits.

Page 6 – **DEFENDANTS' RULE 50 MOTION**

lacked any means of amplifying their voices above the raucous noise of the party." *Id*. Because "the police did not give orders to the group until after the shooting of the projectiles had already occurred" the court found no failure to comply with orders. *Id*. at 881. This was not the case here. Instead, several minutes of amplified dispersal orders that could be heard blocks away were given and defied by a large portion of the crowd - including Plaintiff - prior to any munitions being used. (*See* Hisel Decl., Exs. 4, 6, 7) (announcements included "Turn around and walk away"; "This is the Salem Police Department"; "This is an unlawful assembly"; "Leave now"; "Turn around and leave"; "Go home" and were all provided from an amplified Long Range Acoustic Device ("LRAD") prior to any munitions being used).

Moreover, in *Nelson* "there was no exigency motivating the officers' action." *Id*. at 886. By contrast, in the present case Officer Johnston acted against a crowd that unquestionably included multiple *aggressive* individuals, *did not target Plaintiff* with the force, and a crowd that *approached* both a line of police officers and the critical infrastructure of the bridges for which the same crowd had already occupied the <u>same</u> night. (ECF 114). This is categorically different than the circumstances in *Nelson* where the Court questioned whether any crimes had been committed by anyone or the reason for police involvement. *Nelson* at 886. Even Plaintiff's expert agreed that SPD performs the critical role of keeping the two existing downtown bridges clear for the safety of the public. (Hisel Decl., Ex. 1, Tr., pp. 19, 32) ("…based on the fact that it's ingress and egress in and out of downtown Salem for emergency vehicles, I think that's a prudent decision by the lieutenant to have the forethought to think, 'We don't want anyone to go up on the bridge because people need to get to and from.'").

Neither *Nelson* nor any other case can serve to strip Officer Johnston of the qualified immunity he is entitled to.

Page 7 – **DEFENDANTS' RULE 50 MOTION**

IV. **Subsequent Litigation Further Supports Officer Johnston's Entitlement to Qualified Immunity**

Although the qualified immunity analysis rightfully focuses on the precedent in force at the time of the conduct, subsequent litigation that has surrounded the use of different <u>types</u> of crowd control munitions serves to further underscore Officer Johnston's entitlement to qualified immunity. Subsequent to the events at issue here, Chief Judge Hernandez was faced with similar challenges arising from protests in Portland. On June 5, 2020, a nonprofit corporation called "Don't Shoot Portland," brought suit against the City of Portland and Multnomah County, alleging those entities "violated the First and Fourth Amendments in their use of less-lethal force during protests." *Don't Shoot Portland v. City of Portland*, 503 F. Supp. 3d 1022 (D. Or. 2020) (hereinafter, "*Don't Shoot*").

On June 26, 2020, Judge Hernandez issued a Temporary Restraining Order related to the police tactics being used during Portland demonstrations. *Don't Shoot*, 503 F. Supp. 3d at 1022. The Plaintiffs in that case proposed certifying a class of "individuals engaged in no more than passive resistance." *See Don't Shoot*, No. 3:20-CV-00917-HZ, 2022 WL 2700307, at *14 (D. Or. July 12, 2022). Judge Hernandez rejected the proposed class because the court must consider in each incident "the behavior of nearby protestors, the exigency of the situation, any threatening behavior, and whether the police gave sufficient warnings," among other factors. *Id*. at *13 (citing *Felarca v. Birgeneau,* 891 F.3d 809, 817–19 (9th Cir. 2018)).

This analysis is accurate in that there has never been any *per se* rule that officers violate a passively resistant protester's rights by deploying an indiscriminate crowd munition in the direction of a crowd containing some demonstrators that are actively aggressive and some that are not. Indeed, such a rule would render the use of *all* crowd <u>dispersing</u> munitions (as distinguished from the "concussive" point-of-aim-point-of-impact munitions involved in *Nelson*)

Page 8 – **DEFENDANTS' RULE 50 MOTION**

unconstitutional because every individual member of the crowd that may be impacted by the munition would **<u>all</u>** have to be actively aggressive at the very moment of deployment to avoid violating the Fourth Amendment. If Plaintiff's version of the Fourth Amendment were adopted (like here), passively resisting demonstrators could insulate and protect the violent individuals in the rear of the crowd with a wall of people, and the police would have no recourse for dispersing the crowd. Instead, they would be <u>required</u> to place themselves in further risk by entering the crowd to address the violent individuals, retreat, or just stand and take whatever the now-protected individuals in the back are throwing unless a moment arose where <u>every</u> individual potentially impacted by a Stinger round were all actively aggressive at the same time. Even if this were the standard required by the Fourth Amendment - which it is not - that requirement was not "clearly established" on May 31, of 2020.

The Plaintiffs in *Don't Shoot* moved for a finding of contempt against the City of Portland alleging violations of the June 26, 2020, Stipulated Additional Temporary Restraining Order ('the Order'). 503 F. Supp. 3d at1026. Several of the disputed incidents involved officers firing *targeted* impact munitions (described as "point-of-aim-point-of-impact" type munitions at our trial) against protesters who kicked or threw smoking canisters back at officers. 503 F. Supp. at 1035 (Incidents 5, 7, and 8). Judge Hernandez found that "kicking or throwing smoke canisters constitutes a threat or act of assault" regardless of whether the protester "subjectively intended to assault or threaten to assault officers …." *Id*. at 1035 (emphasis added) ("…smoke canisters are heavy, hot, and dangerous projectiles when thrown at officers. When kicked, smoke canisters can envelop officers in smoke, eliminating their line of sight and providing an opportunity for individuals to injure officers with projectiles."). "Thus, under those circumstances, officers reasonably perceived the actions of [protesters] as **active aggression**, and their use of impact munitions [including the higher

Page 9 – **DEFENDANTS' RULE 50 MOTION**

level of concussive, point-of-aim-point-of-impact munitions] was appropriate." (emphasis and bracketed addition added).

Even though the jury found Officer Johnston liable for injuring Plaintiff, they determined Officer Johnston *did not target* Plaintiff. (ECF 114). Officer Johnston remains entitled to qualified immunity because no case provides that firing a Stinger round in the direction of a crowd that includes a violent element violates the rights of any passively resisting member of the crowd that is incidentally struck.

## CONCLUSION

Defendants respectfully request this Court enter judgment in favor of Officer Johnston. It was not (and is not) clearly established that a police officer violates an individual's Fourth Amendment rights by using a Stinger round under the circumstances faced by Officer Johnston at the time Plaintiff was injured.

DATED this 14th day of October, 2022.

        s/ Aaron P. Hisel
        Aaron P. Hisel, OSB #161265
        Jennifer M. Gaddis, OSB #071194
        Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANTS' RULE 50 MOTION on:

    Kevin C. Brague
    The Brague Law Firm
    4504 S. Corbett Avenue Suite 250
    Portland, OR 97239
    *kevin@braguelawfirm.com*
        Attorney for Plaintiff

by the following indicated method or methods:

☒     by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

        by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below;

        by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

DATED this 14th day of October, 2022.

                                            s/ Aaron P. Hisel
                                        Aaron P. Hisel, OSB #161265
                                        Of Attorneys for Defendants