Kevin C. Brague, OSB No. 050428
kevin@braguelawfirm.com
THE BRAGUE LAW FIRM
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
t: 503.922.2243
f: 503.296.2046

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ELEAQIA MCCRAE**,<br><br>        Plaintiffs,<br><br>v.<br><br>**CITY OF SALEM; MAYOR CHUCK BENNETT; CITY MANAGER STEVE POWERS; POLICE CHIEF JERRY MOORE; OFFICER RAMIREZ; ROBERT JOHNSTON; ANDREW MCFERRON; DAVID SMITH; OFFICERS JANE OR JOHN DOES 1-21**, all in their Official and Individual capacities;<br><br>        Defendants. | Case No. 6:20-cv-01489-IM<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 50 MOTION ON QUALIFIED IMMUNITY**<br><br>*Oral Argument Requested* |

## RESPONSE

    Defendant Robert Johnston moves this court for judgment as a matter of law based on qualified immunity. Officer Johnston's motion should be denied because established Ninth Circuit case law and the jury's verdict in this case supports the denial of qualified immunity. Moreover, Officer Johnston fails to carry his burden of proof that he is entitled to qualified immunity.

# MEMORANDUM

A. **Legal Standard**

It is Defendants' burden of proving their entitlement to qualified immunity. *Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993); and *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998)[qualified immunity is an affirmative defense and that the burden of pleading it rests with the defendant].

The jury found a legally sufficient evidentiary basis to find for Plaintiff on the issue of excessive force and denial of qualified immunity. Fed. R. Civ. P. 50(a)(1).

> A jury's verdict must be upheld if it is supported by substantial evidence. Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence.

*Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir 2001).

The standard for judgment as a matter of law is the same inquiry for granting summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105, 121-22 (2000). In reviewing the evidence in the record, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Id.* [1]

> "Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b). Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. Thus, a party cannot properly raise arguments in its post-trial motion for

---

[1] The court must decline Defendants' invitation to re-assess and re-weigh the evidence. *Reeves* 530 U.S. at 150. The video evidence presented to the jury and the credibility determinations it made of the witnesses and experts should remain undisturbed. *Id.* and *Lam* 976 F.3d at 995. The court must decline Defendants' arguments not raised in his Fed. R. Civ. P. Rule 50(a) motion at trial and post-verdict. *EEOC* 581 F3d at 961. This includes Defendants' arguments on page 4-5, and 8-10 of its Rule 50 Motion. ECF 115.

judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."

*EEOC v. Go Daddy Software, Inc.*, 581 F3d 951, 961 (9th Cir 2009).

The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Id.*, quoting *Josephs v. Pac Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).

**B.    Officer Johnston is not entitled to Qualified Immunity.**

Qualified immunity shields government agents from liability for violating constitutional rights when they are not "clearly established." *Camreta v. Greene*, 563 U.S. 692, 705 (2011). It has two prongs: Whether the officer violated a right and whether that right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts may address the prongs in either order, but the Supreme Court has recognized that addressing the merits first is "often beneficial," and the Ninth Circuit "typically" addresses the merits first. *Id.*; *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013).

To determine whether an officer violated clearly established law, the Court looks for factually similar cases, "mindful that there need not be a case directly on point." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016). Even in novel factual circumstances, officials are not entitled to qualified immunity if their conduct "obvious[ly]" or "egregious[ly]" violates the Constitution. *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (per curiam) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 745 (2002)). That principle applies with especial vigor in excessive-force cases. *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). The constitutional standard for excessive force is "very fact-specific," so if courts always required a prior case with identical material facts, officers would "rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Id*. That is why the

Ninth Circuit has underscored, en banc, that officers who use unreasonable force can be on notice that their conduct violates clearly established law "even in novel factual circumstances." *Id*. (quoting *Hope*, 536 U.S. at 741).

1. <u>Officer Johnston used excessive force against Plaintiff McCrae, violating the Fourth Amendment.</u>

On September 30, 2022 a unanimous jury of seven men and one woman found that Plaintiff proved by a preponderance of the evidence that Officer Johnston violated her Fourth Amendment right not to be subjected to excessive force by shooting her in the eye and chest. ECF 114.

The special findings of whether or not Officer Johnston targeted Plaintiff is of no consequence to the determination of qualified immunity.[2] First, the inclusion of this special finding is generally rebutted by the jury finding for Plaintiff and awarding her damages. Second, the jury's verdict on the Fourth Amendment excessive force claim nullifies and renders moot the Special Findings of Officer Johnston's targeting of Plaintiff. Third, the jury found Officer Johnston used excessive force in shooting Plaintiff which is an intentional act when Officer Johnston fired into the crowd. *Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012). The special finding is contrary to the Ninth Circuit's analysis for Fourth Amendment seizures. Fourth, the jury instruction for excessive force instructed the jury on the law concerning Officer Johnston violating Plaintiff's Fourth Amendment rights by shooting her in the eye and chest with a stinger rounds during a protest. ECF 110, p. 18. The jury is presumed

---

[2] Plaintiff maintains her objection to this question on the Verdict Form. *United States v. 20832 Big Rock Drive*, 51 F.3d 1402, 1409 (9th Cir 1995)[verdict form must fully and fairly present to the jury the issues it was called upon to decide]. The inclusion of this question is duplicative of the elements for the Fourth Amendment excessive force claim and jury instruction and confusing to the jury.

to have followed the jury instructions. *Yates v. Evatt*, 500 U.S. 391, 403, 111 S. Ct. 1884, 1893, 114 L.Ed.2d 432, 448-49 (1991).

When a police officer uses physical force against a free individual, he must comply with the Fourth Amendment's prohibition against unreasonable seizures. *Villanueva v. California*, 986 F.3d 1158, 1169 (9th Cir. 2021). If the officer uses a degree of force that is "'objectively [un]reasonable' in light of the facts and circumstances," his conduct violates the Fourth Amendment. *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Whether a particular use of force is reasonable depends on the type, amount, and severity of force used, and on the government's interest in using that degree of force. *Id.*; *Villanueva*, 986 F.3d at 1169. Force that "creates a substantial risk of causing death or serious bodily injury" is deadly force. *Smith v. City of Hemet*, 394 F.3d 689, 693, 706 (9th Cir. 2005) (en banc). Here, the jury found that Officer Johnston shot Eleaqia McCrae using excessive (deadly) force. ECF 114.

In *Deorle v. Rutherford*, the Ninth Circuit held that a less-lethal munition, similarly fired at the plaintiff's head and causing a similar injury, "f[ell] short of deadly force"—but only because the court at that time used an "extremely high" standard out of line with the other circuits. 272 F.3d 1272, 1280 & n.15, 1284–85 (9th Cir. 2001). In *Smith*, the Ninth Circuit adopted the test for deadly force "employed by all other courts of appeals to have confronted the question": force that creates a "substantial risk" of causing death "or serious bodily injury." 394 F.3d at 705–06. Under this test, the jury found that Officer Johnston used excessive force (i.e. lethal or deadly force). *Deorle*, 272 F.3d at 1279–80 & n.15. Less-lethal rounds, shot at the

Page 5 – PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 50
MOTION ON QUALIFIED IMMUNITY

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

"facial area," can have "lethal capabilities." *Id*. at 1279.[3] Thus, using them in that manner creates—at the very least—a "substantial risk of causing . . . serious bodily injury." *Smith*, 394 F.3d at 693; see also *Deorle*, 272 F.3d at 1279 n.13 (explaining that a less-lethal round is "capable of inflicting serious injury or death").

> Every police officer should know that it is objectively unreasonable to shoot — even with lead shot wrapped in a cloth case — an unarmed man who[ ] has committed no serious offense . . . has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals.

*Deorle* 272 F.3d at 1285.

Pursuant to Salem Police Policy, Stinger rounds are considered intermediate less-lethal force that can be fatal and has "the potential of death or serious physical injury." Decl. Brague, Ex. 1; Ex. 2; Ex. 3 TR Johnston, p. 23, 27. Using an ordinarily less-than-lethal type of force improperly can "transform [it] into deadly force." *Smith*, 394 F.3d at 707 quoting *Robinette v. Barnes*, 854 F.2d 909, 913 (6th Cir. 1988). That is why police departments all over the country, including City of Salem's Police, prohibit "head strikes with an impact weapon" unless "circumstances justify the use of deadly force." See, e.g., *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (Los Angeles Sheriff's Department policy); *Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005) (Orlando Police Department policy). The City of Salem's Police Department Policy is in accord. Decl. Brague, Ex. 1; Ex. 3, TR Johnston, p. 23-24. The jury could reasonably infer that other departments similarly prohibited head strikes with less lethal impact munitions. Decl. Brague, Ex. 4, TR DeFoe p. 32; Ex. 5, TR Fomby, p.18.

"The intrusiveness of a seizure by means of deadly force is unmatched." *Longoria v.*

---

[3] The less-lethal munition used in *Deorle* travels slower than a stinger round at 280 to 300 feet per second. *Deorle*, 272 F.3d at 1277 n.8. Compare trial exhibit 109. Decl. Brague, Ex. 2.

*Pinal Cty.*, 873 F.3d 699, 705 (9th Cir. 2017) quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). The Fourth Amendment forbids the use of deadly force against "an unarmed, nondangerous suspect." *Garner*, 471 U.S. at 11; *Longoria*, 873 F.3d at 709 (finding that proposition clearly established). The jury found that Officer Johnston's use of force was excessive and therefore a reasonable inference supported by substantial evidence is that his use of force was deadly because it was "capab[le] of causing serious injury," and thus was permissible "only [if] a strong governmental interest compel[led] the employment of such force." *Deorle*, 272 F.3d at 1280.[4]

Defendants admit the jury found that Officer Johnston shot Plaintiff, and thus concede the verdict must be upheld. ECF 115 p. 5; *Johnson*, 251 F.3d at 1227. Nevertheless, Defendants ask the court to re-assess the credibility and re-weigh the evidence contrary to Supreme Court precedent. *Reeves*, 530 U.S. at 150. Defendants did not raise this argument during or after trial in its Rule 50 motions and is not properly before this court. *EEOC,* 581 F.3d at 961. The jury's verdict is reasonable, supported by substantial evidence, and it is not susceptible to one conclusion contrary to the jury's verdict with reasonable inferences going to the Plaintiff. *EEOC,* 581 F.3d at 961.

  2. <u>Officer Johnston's excessive force against Ms. McCrae was clearly established.</u>

Officer Johnston's argument rests on the premise that there is no other case where a police officer fired less-lethal (stinger) rounds injuring a protestor and was held liable. Officer

---

  [4] In *Glenn v. Washington Cty.*, the Ninth Circuit quoted *Deorle's* reasoning that impact munitions are "less than deadly." 673 F.3d 864, 871–72 (9th Cir. 2011). It did not cite or employ the standard announced en banc in *Smith*, likely because nothing seems to have turned on its classification. *Id*. Also, the munitions in *Glenn* appear to have been fired at the body and to have caused no serious injury. *Id*. at 869. *Glenn* does not stand for the proposition that impact munitions fired at the head are less than deadly force. And even if it did, it held that the use of impact munitions there was excessive. *Id*. at 872–78.

Johnston argues that unless an officer's conduct is "obvious[ly]" unconstitutional, a plaintiff must find a single case that controls each and every factor of the excessive-force analysis to overcome qualified immunity. See ECF 115. This, however, is not the law. Such a requirement would imbue officers not with qualified immunity but with absolute impunity. *Mattos*, 661 F.3d at 442; *Bonivert v. City of Clarkston*, 883 F.3d 865, 872–73 (9th Cir. 2018). Instead, what a plaintiff needs is a "body of relevant case law" that, as a whole, clearly establishes the unconstitutionality of the officer's conduct. *Rice*, 989 F.3d at 1126. A plaintiff defeats qualified immunity with cases that clearly establish the law on "specific factors" of the excessive-force inquiry. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir 2017). *Rice*, for example, synthesizes six different cases that together clearly established the relevant state of the law. 989 F.3d at 1126. *Nelson* is similar. 685 F.3d at 883–87. So is *Gravelet-Blondin*. 728 F.3d at 1093–96. Qualified immunity does not alter this basic mode of legal analysis.

In *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) the Ninth Circuit held that firing a similar munition (pepperballs) into a crowd was intentional and violated the Fourth Amendment. *Id*. at 873.[5] In *Nelson*, the plaintiff, like here, was trying to leave. *Nelson* 685 F.3d at 874; Decl., Brague, Ex. 6, TR McCrae p. 25-26. No charges or crimes were charged to Nelson, like here. *Id*., and Decl. Brague, Ex. 3, TR Johnston p. 24; Ex. 6, TR McCrae p. 38. Nelson suffered permanent damage to his eye, withdrew from the U.C. Davis, and lost his athletic scholarship. *Id*. *Nelson* defendants appealed the denial of their motion for qualified immunity. *Id*. at 875. The Ninth Circuit held:

---

[5] Pepperball rounds are fired at a velocity of 350 to 380 feet per second with the capacity to fire seven rounds per second. *Id*. Compare Trial Ex. 109 Stinger rounds are fired at a velocity of 325 feet per second and simultaneously shoot about eighteen rubber balls. Decl. Brague, Ex. 2., Ex. 3 TR Johnston p. 13.

> Regardless of whether Nelson was the specific object of governmental force, he and his fellow students were the undifferentiated objects of shots intentionally fired by the officers in the direction of that group. Although the officers may have intended that the projectiles explode over the students' heads or against a wall, the officers' conduct resulted in Nelson being hit by a projectile that they intentionally fired towards a group of which he was a member. Their conduct was intentional, it was aimed towards Nelson and his group, and it resulted in the application of physical force to Nelson's person as well as the termination of his movement. Nelson was therefore intentionally seized under the Fourth Amendment.

*Id*. at 877.

Additionally, the Ninth Circuit noted that the potential for injury must not be evaluated on the presumption that the shot will hit the precise part of the body at which it is aimed by the shooter, but rather based on its capacity for causing serious harm. *Id*. at 885 quoting *Deorle* 272 F.3d at 1285, n.23. Further, the Commission on Peace Officer Standards and Training ("POST") guidelines specified that officers using pepperball guns should avoid the head, face, and groin due to risk of causing serious injury. *Id*. at 879. Like here, the officers in Nelson were aware of the limitations of the munitions used and the risks. *Id*., Decl. Brague, Ex. 1; Ex, 3, TR Johnston p. 23-25, and 27-28.

The testimony at trial allowed the jury to infer that Officer Johnston direct fired the Stinger round into the crowd shooting Eleaqia McCrea in the eye and chest. Decl. Brague, Ex. 3, TR Johnston, p. 62; Ex. 4, TR DeFoe p. 11-12, 39-41; Ex. 7, TR Morrison p. 12-13, 17, 18, 20, 21-22, 24, 25; Ex. 8, TR Pruden p. 13-14. Defendant Johnston's shot was neither negligent nor indiscriminate. His shot was intentional, he pulled the trigger on purpose and shot Eleaqia McCrae. The jury's decision relied on this reasonably objective evidence. *Kingsley v. Hendrickson*, 576 US 389, 401, 135 S Ct 2466, 2475, 192 LEd2d 416, 429 (2015). The Ninth Circuit uses *Kingsley* to analyze Fourth Amendment claims. See, e.g., *Demarest v. City of Vallejo*, 44 F.4th 1209, 1225 (9th Cir. 2022); *Zelaya v. Las Vegas Metro. Police Dep't*, 682 F.

App'x 565, 567 (9th Cir. 2017); *Rosales v. Cnty. of Los Angeles*, 650 F. App'x 546, 548 (9th Cir. 2016).

The Ninth Circuit has held when an individual's resistance was not particularly bellicose, it has held that various applications of force from pepper spray to bean bag rounds were not reasonable. *Nelson* 685 F.3d at 882. The Ninth Circuit concluded:

> Nor, even if we were to consider all the partygoers as a single entity, was the desire to clear the area sufficient justification for employing the force used by the government — the firing of pepperball projectiles with the potential kinetic impact of the projectile and the actual impact of the pepper spray, resulting in this instance in serious and permanent injury to one or more individuals. This force resulted in substantially more than a minimal intrusion and was not justified by the governmental interest in dispersing a group of student partygoers who could most likely be dispersed by less forceful means. We therefore conclude that the force used by the government was unreasonable and resulted in a violation of the Fourth Amendment.

*Nelson* 685 F.3d at 883.

The *Nelson* court found that it was clearly established that the use of force was unconstitutional and denied qualified immunity:

> Although the pepperball projectile is a relatively new mechanism by which a combination of concussive impact and chemical irritants can be applied to individuals by law enforcement, the type of pain inflicted is the same or greater than that caused by weapons that this court has already recognized constitute excessive force when applied individually under similar circumstances. Thus, just as our prior cases provided notice to all reasonable officers that targeting Nelson and his group with a projectile weapon with concussive force that could cause serious physical injury or targeting them with pepper spray [*885] was unreasonable under the Fourth Amendment, our precedents make it equally clear that utilizing a weapon against Nelson's group that combined both of these forms of force amounted to a constitutional violation.

*Nelson* 685 F.3d at 884-885. See also, *Fogarty v. Gallegos*, 523 F3d 1147, 1161-62 (10th Cir 2008)[denial of qualified immunity for using less lethal munitions and excessive force].

Plaintiff's right not to be shot in the eye and chest (deadly force) while at a peaceful

Page 10 – PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 50
MOTION ON QUALIFIED IMMUNITY

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

protest was established long before she was shot by Officer Johnston.[6] On every element of the excessive-force analysis, Plaintiff's authorities date years before 2020 thus clearly establishing that a reasonable officer would know that shooting a protestor in the eye and chest with deadly or lethal force is unconstitutional.

Degree of force. The Ninth Circuit clearly established by 2005, first, that force that creates a "substantial risk of causing . . . serious bodily injury" is deadly force; and second, that a less-lethal round is "capable of inflicting serious injury or death," especially if shot at the "facial area." *Smith*, 394 F.3d at 693; *Deorle*, 272 F.3d at 1279 & n.13. See also, Decl. Brague, Ex. 1; Ex. 3, TR Johnston p. 32. The Supreme Court clearly established in 1985 that deadly force is forbidden against an unarmed, nondangerous suspect. *Garner*, 471 U.S. at 11; *Longoria*, 873 F.3d at 709. The Ninth Circuit had clearly established by 2001 that shooting a less-lethal munition at the head is impermissible unless "a strong governmental interest compels the employment of such force." *Deorle*, 272 F.3d at 1280.[7]

Severity of offenses. The Ninth Circuit had clearly established by 2011 that crimes like failure to disperse—on par with "trespassing and obstructing a police officer"—are "not severe crimes." *Mattos*, 661 F.3d at 444; see also *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091(9th Cir. 2013) (failure to comply with an order to get back from the scene of an arrest, if an offense at all, was "far from severe"). Decl. Brague, Ex. 6, TR McRae p. 38; Ex. 3, TR Johnston p. 27.

---

[6] *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S. Ct. 1694, 1697, 85 L.Ed.2d 1, 4 (1985)[deadly force may not be used unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others].

[7] In *Rodriguez v. Cty. of L.A.*, 96 F Supp 3d 990, 1002-03 (CD Cal 2014) aff'd *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 784 (9th Cir 2018) the court denied qualified immunity based on the fact that <u>the use of stinger rounds</u> in response to Plaintiffs' refusal to comply with instructions <u>was excessive force as a matter of law</u>. This reported decision is contrary to Officer Johnston's entire qualified immunity argument, as well as his reliance on *Don't Shoot Portland v. City of Portland*, 503 F. Supp. 3d 1022 (D. Or. 2020).

Degree of threat and resistance. The Ninth Circuit had clearly established by 2012 that "failure to fully or immediately comply with an officer's orders" does not justify a non-trivial level of force. *Nelson v. City of Davis*, 685 F3d 867, 881-82 (9th Cir 2012)(collecting much earlier cases).[8] It had also clearly established by 2011 that brief "defensive" movements "to protect [one's] own body," like pushing an officer away, are not active resistance. *Mattos*, 661 F.3d at 449; see also *Davis v. City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir. 2007) (plaintiff who physically prevented an officer from searching his pockets was not actively resisting). Decl. Brague, Ex. 6, TR McCrae p. 25-26.

Protest conditions. The Ninth Circuit had clearly established by 2012 that the government's interest in "stopping any and all disorderly behavior" and in "resolv[ing] quickly a potentially dangerous situation" cannot justify force against someone who is not himself posing a threat or actively resisting. *Nelson*, 685 F.3d at 883; *Bryan v. MacPherson*, 630 F3d 805, 826 (9th Cir 2010) (quotation marks omitted). Although *Nelson* involved a party, not a protest, the Ninth Circuit had held that it clearly established the law for protests, too. *Senn v. Smith*, No. 21-35293, 2022 WL 822198, at (9th Cir. Mar. 18, 2022) (holding that *Nelson* clearly established that police may not use significant force without warning against an individual who committed minor misdemeanors, who posed not apparent threat to officer or public safety, who was not seeking to flee, even though a variety of less intrusive alternatives to the use of force was available. See also, *Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011). Decl.

---

[8] Officer Johnston misrepresents the *Williams v. City of National City*, 23 F.4[th] 1146, 1152 (9th Cir. 2022) which did not limit its holding to "pepperballs." The *Williams* case noted that *Nelson* "held that shooting someone in the face with a pepperball when trying to break up a party was a "significant" intrusion where "officers were advised not to shoot pepperballs indiscriminately or at individuals that were not posing a threat," "[t]he possibility of serious injury was apparent to the officers at the time of the shooting," and the pepperball caused "significant damage to [plaintiff's] eye." 685 F.3d at 878-79." *Id*.

Brague, Ex. 9, *Senn v. Smith and City of Portland*, Ninth Circuit 21-35293 unpublished memorandum (9th Cir. Mar. 18, 2022).[9]

A bare desire to resolve a possibly dangerous situation "quickly" cannot justify "the use of force that may cause serious injury." *Bryan*, 630 F.3d at 826; see also *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1129 (9th Cir. 2021) (same). The person against whom force is used must independently present a threat. *Id.*; see also, *Nelson*, 685 F.3d at 881[general disorder cannot be used to legitimize the use of less lethal projectiles against non-threatening individuals].

Balancing the force used against the state's interests. The Ninth Circuit had clearly established by 2011 that the use of "substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to officer or public safety" is unreasonable. *Young*, 655 F.3d at 1166–67; see also *Rice*, 989 F.3d at 1125. And it had clearly established the standard for use of deadly force en banc by 2014. See *Gonzalez*, 747 F.3d at 793–94.

In sum, the "right to be free from the application of non-trivial force for engaging in mere passive resistance" has been established since at least 2011. *Rice*, 989 F.3d at 1125 (quoting *Gravelet-Blondin*, 728 F.3d at 1093). Or, to quote the Northern District of California from a similar case: "Nelson clearly established [in 2012] that firing a less lethal projectile that risked causing serious harm at an individual who was not an imminent threat to officers in the

---

[9] Officer Johnston's reliance on Judge Hernandez' opinion in *Don't Shoot Portland v. City of Portland* is distinguishable because Ms. McCrae did not touch any gas canister, was not resisting, threatening, or engaging in any aberrant behavior, and was decided on a TRO which standards are much different than Fed. R. Civ. P. Rule 50. Here, Officer Johnston was found by the jury to have used excessive force by shooting stinger rounds which constitutes excessive force as a matter of law. *Rodriguez*, 96 F Supp 3d at 1002-03.

midst of an allegedly unlawful assembly, resulting in an injury restricting the movement of that individual, amounts to a seizure and an excessive use of force." *Johnson v. City of San Jose*, 2022 US Dist. LEXIS 46669 at *23; 2022 WL 799424, at *7 (N.D. Cal. Mar. 16, 2022) (citing *Nelson*, 685 F.3d at 875–83).

## CONCLUSION

Officer Johnston is not entitled to qualified immunity based on the law clearly established years before May 31, 2020 when he shot Eleaqia McCrae in the eye and chest.

DATED this 27th day of October, 2022.

        THE BRAGUE LAW FIRM

By _____
    Kevin C. Brague, OSB No. 050428
    kevin@braguelawfirm.com
    4504 S. Corbett Avenue, Suite 250
    Portland, Oregon 97239
    t: 503.922.2243
    f: 503.296.2046
    Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 50 MOTION ON QUALIFIED IMMUNITY on the party listed below by the following indicated method or methods:

>Aaron P. Hisel, OSB No. 161265
>*aaron@montoyahisellaw.com*
>Montoya, Hisel and Associates
>901 Capitol Street NE
>Salem, OR 97301
>T: 503.480.7250
>F: 503.779.2716
>Attorneys for Defendants

[X] by electronic means through the U.S. District Court, District of Oregon's CM/ECF document filing system.

[ ] by mailing a full, true and correct copy thereof in a sealed, first-class postage paid envelope, addressed to the address as shown above, with the U.S. Postal Service at Portland, Oregon, on the date set forth below.

[ ] by causing a full, true, and correct copy thereof to be hand-delivered to the attorney at the attorney's last known office address listed above on the date set forth below.

[ ] by faxing a full, true, and correct copy thereof to the attorney at the fax number shown above, which is the last-known fax number for the attorney's office, on the date set forth below.

DATED this 27th day of October, 2022.

*/s/ Kevin Brague*
Kevin C. Brague, OSB No. 050428

Page 1 – CERTIFICATE OF SERVICE

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243